Standing 78-40, Christopher Gilmore v. Charles Carey All right, would the attorneys for the two parties in the Gilmore-Carey case please approach the podium both sides and tell us who you are and who you represent. For the FLI. For Defendant's Appellants, Justices Catherine Hartman. And Richard Tillman for the Plaintiff's Appellee, Christopher Gilmore. I'm here with Michael Ficarro. Okay. You can see we're fairly familiar with what goes on. We've been up here for a while, I mean for years. And so we've read the briefs. We're familiar with the case law, the record. We'd appreciate it if you could get to your strongest point first. Anytime you're ready, Ms. Hartman. Okay, thank you. May I ask you to speak up? Certainly, yes. Good morning. As the Court is aware, we are here because of Defendant's request for appellate review on an interlocutory basis of two issues. The first, whether or not the trial court in this case erred in denying Defendant's Appellant's motion to compel arbitration of counts two through five of plaintiff's complaint. And the second, whether or not the trial court erred in denying our motion to stay proceedings pending arbitration of those counts. Because the Court here did not conduct an evidentiary hearing, the standard of review is de novo. Tell me about arbitration. A little bit about arbitration. Are they educated in the field? Are CME arbitrators educated in the field? Yes, they're chosen. They do have specialized knowledge of the subject matter of exchange-related business. That's the way I recall it. I'm sorry? That's the way I recall it. But are they educated in contract law? Is this a contract? This involves contract law, but contract law that relates directly to transactions on or subject to the rules of the exchange, as well as contract law that governs the ownership interest in trading rights on the exchange. There are four counts here that we maintain are subject to arbitration, counts two through five. Count two relates to breach of a services agreement, which you're correct is breach of a contract claim. Under Gelderman v. Mullins, breach of contract claims were found to be subject to Rule 600, which is the Chicago Board of Trade Rule 600, which mandates arbitration of certain exchange-related disputes. They found that the breach of contract claim there was subject to Rule 600 and fell under its scope. Here, the breach of contract claims, count two, breach of the services agreement, does relate to transactions on the exchange. Plaintiff alleges that the services agreement governs his management oversight and other proprietary trading activity that he conducted for the prop trading firm, Defendant Henning Carey Proprietary Trading. Moreover, he says that the service agreement governs his payment for those activities, which is an 80-20 split of profits. That split is itself subject to the rules of the exchange. What splits can be entered into between member firms and their employees or members is governed by fee policy bulletins, which under the Chicago Board of Trade rules constitute rules in and of themselves. As such, the contract is in and of itself a transact subject to the rules of the exchange. Why send them to arbitrators when they might not have any experience in contract law? Isn't that what we do when I send a trial? Sure, but I think that what Mullen shows is that if the breach of contract claim at issue deals with exchange-related issues like those described in Rule 600, it is still properly sent to the arbitrators who have specialized knowledge in exchange-related disputes. And the trial court looked upon Section 10.4 of the operating agreement? The trial court here did, as one of the reasons listed for denying our motion to compel arbitration, look to Section 10.4 of the operating agreement, which is a venue provision. Whether or not the inclusion of a venue provision in an agreement trumps an arbitration agreement, it was dealt with by this court in the case of Gelderman v. Stathis. That court found that it did not, and they did so based on the following reasons. They noted the presumption in favor, the policy, I should say, favoring arbitration, which is the case here in Illinois. There is a clear and well-articulated policy favoring arbitration of disputes. They also noted that there was no explicit waiver of arbitration in the venue provision at issue in the Stathis matter. Here, too, there was no explicit waiver of arbitration in Section 10.4 of the operating agreement. Illinois law requires an explicit waiver of arbitration. We cite case law to that effect. It also, Feldheim v. Sins, which we had cited in our emergency motion to stay, clearly states that Illinois disfavors, they actually use the word disfavors, waiver of arbitration. And given the policy in Illinois favoring arbitration, just as under federal law, which was at issue in Stathis, the result here should be the exact same as that in Stathis, which is that the venue provision does not trump the agreement to arbitrate. Plaintiff does maintain that there was not an agreement to arbitrate in the first instance. We disagree with that, obviously. We have Rule 600, which mandates the arbitration of certain exchange-related disputes between members. In arguing that there was no agreement under Rule 600, plaintiff maintains two things. He says that defendant H.C. Propp Trading was not a member firm or that there is not evidence in the record from which we can conclude that H.C. Propp Trading was a member firm of the Chicago Board of Trade. That is incorrect. Under the operating agreement that he attaches to his complaint, Exhibit A there, too, notes that defendant Joseph Nicoforo contributed to Henning & Carey Proprietary Trading as his capital, his trading rights on the exchange, and shares of Chicago Board of Trade stock. Under Rule 106H, which we cited in our reply brief here on appeal, that qualifies Henning & Carey Propp Trading as a member firm of the Chicago Board of Trade. They are clearly a member firm. He then in turn argues that he is not himself a member of the Board of Trade and that being a member of a member firm does not subject you to the rules and regulations of the Board of Trade, including Rule 600. That is also incorrect. He himself alleges that he held a Class B membership interest in Henning & Carey Proprietary Trading. He obtained that interest pursuant to Section 2.6 of the operating agreement that he attaches to his complaint as Exhibit B. Section 2.6 makes clear that he put up a capital contribution of $250,000 to obtain in exchange for member trading rights and privileges on the exchange to support his trading activity and acquire member trading rights and privileges on the exchange. In other words, he bought a share of the firm's membership trading rights and privileges. He argues that that relates only to member fee treatment. In other words, only the benefits under the rules. That is simply not the case. You can't obtain the benefits, which is special pricing, better pricing, preferential treatment in terms of access to certain commodities and process, without complying with the concomitant responsibilities and obligations. He cannot have it both ways. He bought the trading rights and he also at the same time incurred all obligations. Just by entering into that transaction, he subjected himself to the rules. The Stafford case makes that clear. Members of an exchange are subject to exchange rules. Those rules constitute a contract. I'm sorry, Judge, did you have a... There's an employment contract out there someplace, right? Both sides signed it? There are two contracts at issue. One is a services agreement, one is an operating agreement. Those are the contracts in the record. The services agreement, he alleges, governs two things. His employment relation relating to GovEx activity, which he never developed. No activity relating to GovEx was ever undertaken. The other that he alleges, the other activity that he alleges the services agreement governs, is his proprietary trading activity. Proprietary trading involves, by definition, transactions on the exchange. Every single trade made is a transaction on the exchange. Even if he's saying that his claims relate to or arise out of not the particular trades, his management and operation governing those trades is itself subject to the rules of the exchange. The rules of the exchange govern fee policies, position limits, position accountability, record keeping requirements, threshold requirements, the type of exchanges permitted as it relates to certain commodities, related positions, quantity, applicable pricing requirements, the time and dates trades can be placed, identification, I could go on and on. And I'm not going to bother. I have an entire list here of just the world of regulations that the management and operation of trading activity is subject to. And under Rule 600, it's not just transactions on the exchange subject to arbitration. It's those that relate to or arise out of transactions on or subject to the rules of the exchange. What clause in 600 do you feel applies to you? Well, we feel we fall under both Rule 600A1, which relates to anything, any cause of action or claim by a member party that relates to transactions on or arising, relates to or arising out of transactions on or subject to the rules of the exchange, as well as Rule 600B as it relates to Claims 3 through 5. Rule 600A2, I should say. I'm sorry. I apologize. Categories 1 and 2 of Rule 600A. Category 2 relates to ownership interest of or ownership of or interest in trading rights on the exchange. As I touched upon when I was saying that Mr. Gilmore clearly qualifies as a member of the exchange and is subject to their rules and regulations, pursuant to Section 2.6, he obtained trading rights in and on the exchange. That puts him squarely within the parameters of Number 2 of Rule 600A. And again, because of that, because that rule, when he put up the contribution, the amount of the contribution that has to put up, what he has to maintain to support his trading activities, that is in and of itself, again, subject to the rules of the exchange. That means that the very contract, the operating agreement itself, is a contract subject to the rules of the exchange. When he entered into it, that was a transaction subject to the rules of the exchange. Profit splits, capital contributions, amounts required to support trading activity, all subject to the rules of the exchange. Two through five, all of the allegations make clear that these claims are exchange-related disputes. What does the exchange know about it, about the case? What does the exchange know about the case? Yeah. Does it know you're here? Does it know that their rules are about to be ruled on by an appellate court over an issue between a four-month employee of a firm? The exchange was served with a subpoena in this matter. I'm going outside of the record. But just to answer your question, they would have knowledge of the litigation as a result of that. Yeah. So both their in-house counsel, outside counsel, and certain board members are familiar with the existence of the litigation. Because that's actually what this case involves. It involves their rules and how they should be applied, and it will have a huge impact on what they do from whenever we issue our opinion forward. And it would seem to me that the amount of money involved is extremely low to have such an incredible consequence foisted upon a group of people that may not even know you're here. But just more from this side. I'm not going to answer them. It's a concern I have. Like in many insurance cases, we get the under guys fighting over $5,000. Then we're going to rule on the real guys who have billions of dollars invested. Now their lives are destroyed. It's something we were forced to make a decision on by two people that wouldn't pay $5,000. I understand. So this is not a $5,000 case. So they do have knowledge, not to deviate from the record, but they do have knowledge of the existence of the case. But also to your point, no action has been commenced to date before an arbitration committee of this type. I'm just expressing a concern I have for the parties. This will have a very strong impact on a whole field of people based on what I'm suggesting is a fairly minor problem. That's why we're here. We're here to answer questions. We can't tell you not to ask us the question. It's just a suggestion. Right. But under both those cases, the Board of Trade, they are aware of the existence of this litigation, and obviously this issue has been addressed in previous litigation as well. The scope particularly of the question of what claims should or shouldn't be arbitrated under Rule 600 in the Mullins case, and also the issue of waiver when you're dealing with a venue provision, and the contractual validity of the rules themselves under the Stathis case. So I think the Board of Trade is familiar with at least existing case law out there that does govern the arbitrability of exchange-related disputes. I think that would be a fair statement based on those opinions. A couple of other points relating to the membership interest. We think that it is clear that Prop Trading is a member firm, that Gilmore held, I'm sorry, Plaintiff held a membership interest in the Prop Trade, the member firm, and therefore was subject to the rules just as the member and the owners of the member firms in both of the Gelderman cases. But also it is important to note that he agreed in writing when he obtained the membership interest to comply with all rules and regulations. He cited for the first time in appeal a rule which set forth some categories defining what is or isn't a member. That related to customer-related disputes, but even taking that for definitional purposes here. That definition defines a member as, number one, it includes all people who are members, almost nonsensically it takes that as a given. And then it goes on to include a sixth category of people, which is members include all those who have agreed in writing to comply with rules and regulations of the exchange, which he did here pursuant to Section 2.6 of the Operating Agreement, which is at issue in Clounds 3 through 5 of his complaint. So even under the rule he cites, he is considered a member of the Chicago Board of Trade. And just to be clear, the certificate of the incorporation of the Chicago Board of Trade maintains that membership is nothing more than the representation of trading rights on the exchange and the utilization of exchange facilities. It also, the rule book defines member as anyone who holds or owns an interest in trading rights on the exchange, which is exactly what he obtained here under Section 2.6. Three sentences. Yeah. Explain why this should not be looked at as a contract in court instead of downward arbitration. Well, I think the question is not whether or not the claim itself is a breach of contract. It's what the contract involves. I mean, as Rule 600 is written, it's concerned with the subject matter of the dispute, not the way the claim was written. If anything, subject, meaning not the way the claim was presented. It's the subject matter that is important. And here the subject matter involves over and over again transactions on or subject to the rules of the exchange, ownership interest in trading or interest in trading rights on the exchange. Rule 600 accepts a very specific category of claims that fall within the descriptions given. Those are federal wage, federal employment and state employment discrimination claims and wage claims, statutory employment discrimination claims and statutory wage claims. That's it. It did not accept all employment-related contract disputes, all employment-related claims, which, by the way, and I want to be careful here. I don't mean to suggest that these claims are employment-related. One involves some employment issues as it related to GovX, but he himself alleges that that contract also involves proprietary trading activity, which is what brings it within the scope of Rule 600. But they also involve ownership interests. They are claims based on his Class B membership, not his employment with the firm. But the answer to the question is that those specific exceptions for those statutory claims further underscore the point that it is the subject matter of the claims at issue that determines whether or not those claims should be arbitrated. Okay. I apologize. Anything else? We have time for reply. Okay. I would like to reserve a couple minutes for reply. I think I have hit on the issues of the agreement, whether the proper scope of the agreement under Mullins, whether that was waived under status. I just want to note very quickly before I step down that we also believe that Count 1 should be stayed pending arbitration of Counts 2 through 5. Because that claim is dependent on the same factual allegations, it is interrelated with the other claims. That's the wage claim, and you're conceding that is not subject to arbitration. We are not moving to arbitrate that claim. We believe that that is specifically accepted from Rule 600. But we do think it should be stayed pending arbitration because some of the factual issues on which that claim are predicated are at issue in the other claims as well. So in the interest of a complete and consistent resolution of the case, we would ask that the appellate court also reverse the denial of our motion to stay in order that Count 1 be stayed pending arbitration of Counts 2 through 5. And if I may, as you said, just reserve a couple minutes for reply. You certainly can. Okay. Thank you very much. You're quite welcome. Mr. Tillman. Good morning. May it please the Court, I'm Rich Tillman, and I represent the Plaintiff Appellee, Christopher Gilmore. This case involves straightforward claims arising from an employment contract and an LLC operating agreement, neither of which include an arbitration clause. In fact, the operating agreement requires that this suit be determined by State or Federal courts in Cook County. Well, that's if the suit's filed, right? The argument is that contrary to counsel's, opposing counsel, that the venue provision Go ahead. Going to that provision, Section 10.14, we disagree with the assertion that that's simply a venue provision. If you look at that provision, it is a dispute resolution clause. It requires that any suit be determined by a State or Federal court in Cook County. It does not merely state that venue shall lie in the State or Federal court in Cook County. I think that's an important difference because you'll often see in contracts a venue clause that says you're subject to venue in this court. And you'll also often see a dispute resolution clause in a different, obviously in another contract, that says you've got to bring this case in arbitration. Here, the dispute resolution clause doesn't say it needs to go to arbitration. It says specifically State or Federal courts in Cook County. Well, it says except as otherwise specifically provided in this agreement. And then you go back to 600. It would indicate that, right, that's the argument. But you're right. It's not just your standard venue clause, which is by any suit filed. Sure. So I was actually misleading you when I read that because I was wrong. Well, that's okay. Thank you. As Judge Duncan Bryce found in this case, we believe Mr. Gilmour's claims are not based on any trading activities and do not fall within the Chicago Board of Trade's arbitration rules. The defendants in this case, two of whom are directors of the CME Group, which operates the Board of Trade, seek arbitration of Counts 2 through 5 of the complaint before a panel of CBOT arbitrators. Because Counts 2 through 5 do not involve CBOT transactions or any trading activities, they should remain with Count 1 in the Circuit Court of Cook County. Factually, this is a very simple case. There are only essentially two factual bases for Mr. Gilmour's claims. First, defendants failed to pay him his guaranteed salary under his employment contract. And second, when Mr. Gilmour was departed from the firm in 2010, they refused to return a $250,000 capital contribution that he made for Class B shares in Henning Carey. Now, defendants seek to overturn Judge Duncan Bryce's ruling by claiming that the CBOT arbitration rules require arbitration. There are three principal reasons why Rule 600 does not apply in this case. First, Counts 2 through 5 of the complaint do not fall within the three enumerated categories under Rule 600. Second, Mr. Gilmour was never a member of the CBOT. And third, as I referenced, the Henning Carey operating agreement requires suit in Cook County. As to the first issue, as Judge Duncan Bryce found, the claims do not fall within Rule 600. Rule 600 is about resolving disputes surrounding trading activities. Counts 2 through 5 are claims arising from employment activities and an LLC operating agreement. They would apply regardless of whether Mr. Gilmour was a member or employee of a trading firm or any other type of firm. Under Rule 600, there are three categories of claims that must be arbitrated. The first is, quote, claims between members that relate to or arise out of any transaction on or subject to the rules of the exchange. I think it's important to note here that contrary to what counsel said, there's no indication in the record anywhere that Mr. Gilmour was hired to engage in transactions on the Chicago Board of Trade, which is the exchange under the CBOT rules. Mr. Gilmour, as reflected very clearly in his employment agreement, was hired for two purposes. First, he was hired to oversee operations on Henning Carey's Govex Trading, which is a trading platform run by State Street Bank, essentially a competitor of the CBOT. And second, he was hired to engage in his own proprietary trading. Now, counsel claims that that was supposed to be proprietary trading under the CBOT, but his employment agreement does not state that anywhere in the employment agreement. There's nothing in his employment agreement that requires or provides for him to make trades on the CBOT. The claims are very simple. A simple breach of an employment contract and the request for the return of his capital contribution, those are the types of claims that can be made by any shareholder of any company in any field anywhere. And they don't involve any specific CBOT transaction. They don't require the court to have any expertise in trading activities. They don't require the court to have any knowledge of CBOT procedures or anything of the sort. Under the second rule of 600, subsection 2, the next set of claims that are required to be arbitrated are, quote, claims between or among members relating to ownership of or interest in trading rights on the exchange. Likewise, that section does not apply to Mr. Gilmour. Mr. Gilmour is not claiming any ownership of trading rights. He's not claiming any interest in CBOT trading rights. The only interest he purchased was a membership interest, essentially shares, in an LLC. He did not purchase individually any trading rights on the CBOT. All he was doing when he traded was trading underneath Henning Carey, which has claimed that it was a member of the CBOT, but has not put forth any evidence in the record to support that assertion. Now, the third set of claims that must be arbitrated under Rule 600 are, quote, claims between members relating to the enforceability of three types of clauses. Counsel has just cited that she believes that the first two categories of 600 apply. There was a reference to Rule 603 in the brief, but it appears that they are no longer asserting that Rule 603 applies, so I will skip over that portion of the rule. Now, the second reason that Mr. Gilmour's claims are not subject to arbitration is because the CBOT rules specifically state that they only cover claims between members. Mr. Gilmour submitted an unrefuted affidavit in the trial court attesting that he was never a CBOT member. While the defendants counter that by reason of the fact that he held an interest in Henning Carey LLC, which they claim without evidence was a member of the LLC, that he somehow individually became a member of the CBOT. There's no support anywhere in the record for that assertion. There's no support in the CBOT rules for that assertion. Even if Henning Carey was itself a member, Mr. Gilmour would not become an individual member of the CBOT merely by holding shares in a company that claims to be a member itself. Under the Rule 601.A of the CBOT rules, there are six specific categories of individuals that are members, and Mr. Gilmour does not fall under any of those six categories. He was not a member or a clearing member under 601.A1, as stated in his affidavit, and the other provision they rely on, 601.A6, that provision, the definition of a member, includes individuals that agree to comply with the CBOT rules. Now, this gets back to actually one of your earlier questions as well, about whether he did, in fact, agree to comply with the CBOT rules. If you look at Section 2.6, which is of the operating agreement, that's the section they rely upon to argue that he was agreeing to comply with the CBOT rules. It is very specific. It states that compliance with the CBOT rules is necessary if the member wants, the member in the LLC, wants to receive, quote, member-free treatment for certain traits. In other words, it requires CBOT rules if the member wanted to have favorable fee treatment under the CBOT rules. It does not require Mr. Gilmour to comply with the CBOT rules for all purposes, simply if he wants to receive member-free treatment. So while compliance with the CBOT rules was an option for Mr. Gilmour, it was not absolutely required by the LLC operating agreement. So that covers the second point about why this case is not subject to arbitration, that Mr. Gilmour was not a member of the CBOT. Moving to the last reason, we've addressed the dispute resolution clause. That clause states, quote, any controversy or claim arising out of or relating to this agreement, its interpretation, enforcement, or breach, and any matter relating to the business for which this limited liability company was formed shall be determined by the federal or state court in Chicago, Cook County, Illinois. Based on this section, a person in Mr. Gilmour's shoes signing the operating agreement could have never anticipated that he would be subject to employment-based claims being arbitrated by a CBOT panel. Now, the defendants rely heavily on the Gelderman v. Strathis case, where the parties in that case agreed to comply with the CBOT rules specifically in their agreement, and the parties also had a venue clause. We do not think the Gelderman case applies for two reasons. First, Mr. Gilmour did not agree to comply with the CBOT rules, other than if he wanted to receive member fee treatment. And second, this was not simply a venue clause. And so the way that the Gelderman court harmonized those two provisions, the venue clause and the arbitration rule, was they said, well, you've got to go to arbitration, and then if you want to enforce the arbitration, the venue's in Cook County. In this case, the dispute resolution clause specifically requires that the suit be determined by the circuit court. It does not say that venue shall be appropriate in the circuit court. It says that the case needs to be determined in the circuit court. So that's an important distinction about the closet issue there and the closet issue in our case. In short, these are basic employment-related disputes that do not deal with specific trading activities, and the parties specifically agreed to resolve the dispute in the circuit court of Cook County. As a result, counts two through five should not be segregated from count one. All claims should proceed in the circuit court. But let me understand you, he's never been on the trading floor? Correct, yes, and there's an affidavit in the record on that. Again, just out of curiosity, why would it give him $250,000? He gave $250,000. Why did he give him? Oh, for the membership interest in the LLC. So he became a part owner in the LLC. But, yeah, there's an affidavit in the record that says he was never employed on the trading floor, and that is at page 201 of the record. So for all those reasons – Almost all the trades that were done now electronically anyway without the floor, right? I mean, I know there's people who show up at the floor, but – Yeah, I think that's correct. Yeah, I think that's correct. Unless there's any other questions, we'd simply ask that the trial court's order be affirmed. Thank you. Ms. Hartman, briefly. Thank you. Just a couple of quick points in response to some issues addressed by counsel for the plaintiff. In terms of his representation that the counts only seek as damages, he's only seeking salary or wages and the return of the contribution. Count 2 alleges damages arising from the improper charging of expenses to the plaintiff. The damages are not, therefore, related to just his salary. The expenses that they are able to charge to the plaintiff, they being the defendants, relate to his proprietary trading activity, and they are governed. Expense allocations, profit-loss splits, and the like, anything related is governed by exchange rules. Again, he has again raised the point that under Section 2.6 of the agreement, he agreed to comply with the rules only for purposes of receiving member fee treatment. That is belied by the very terms of Section 2.6, which make clear that he agreed to comply with all rules and regulations. And as I made the point initially, just to reiterate, he cannot obtain member rights, benefits, privileges without agreeing, without the concomitant responsibilities and obligations. He can't do it. He can't do it under the rules. You have to agree to comply with all of the rules in order to receive those rights and privileges. He says there is nothing in the record which ties his proprietary trading activity to the Chicago Board of Trade. That is incorrect. And I know that the Court has the record before it and is familiar with it, but if I may read from one point of Section 2.6 of the operating agreement. In cases where a Class B member trades the company's proprietary account at the Chicago Board of Trade, and then it goes on to say that that member will put up the money, the $250,000, in order to obtain the member firm's trading rights and specific member fee treatment on that exchange. He put up the money so that he could obtain member fee treatment rights, privileges, obligations, all of the like, on the Chicago Board of Trade, thereby subjecting him to the rules of the Chicago Board of Trade. And to be clear, we maintain that he is subject to the rules and regulations of the Chicago Board of Trade by way of his membership interest in the defendant Henning & Carey proprietary trading L.C. by way of this provision, not as an individual member. The affidavit submitted by Gilmour to the trial court below was very carefully crafted to make clear that he is not an individual member of the Chicago Board of Trade. We do not maintain he is. We maintain that it does not matter. It does not matter under the provisions of the agreement where he nonetheless agreed to comply with all rules and regulations and under the definitions of the Chicago Board of Trade rules and the Certificate of Incorporation, which makes clear that anyone who holds or owns an interest in the exchange or enjoys trading rights or utilizes the facilities of the Chicago Board of Trade is a member. Last point that I just want to make in response to your question where you asked me to respond in three sentences why a breach of contract claim should go to arbitration. I have a one-sentence answer for you. Because they agreed to send it to arbitration. With that, I will leave it. I would respectfully request that the court reverse the trial court's denial of our motion to compel arbitration, order that counts 2 through 5 of this complaint be arbitrated, and reverse the trial court's denial of our motion to stay in order that count 1 be stayed pending arbitration of counts 2 through 5. Thank you for the briefs and the arguments. This case will be taken under advisement.